**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TARRANCE CUMMINGS,

                         Petitioner,               Case Number: 2:13-CV-10045

v.                                        HONORABLE GERALD E. ROSEN

SHERRY L. BURT,

                         Respondent.

_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING CERTIFICATE OF APPEALABILITY

      Petitioner Tarrance Cummings, a state prisoner currently incarcerated at the Muskegon Correctional Facility in Muskegon, Michigan, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He is serving a term of life imprisonment for convictions on two counts of first-degree criminal sexual conduct. Petitioner's application challenges these convictions on the grounds the prosecution withheld exculpatory evidence, trial counsel was ineffective in failing to call an alibi witness, and newly-discovered evidence establishes his innocence. Respondent has filed a motion for summary judgment, arguing that the petition should be denied because it is untimely. For the reasons stated herein, the Court finds the petition for a writ of habeas corpus is untimely and grants the Respondent's motion. The Court also declines to issue Petitioner a certificate of appealability, and denies him leave to proceed on appeal *in forma pauperis*.

# I. Background

Petitioner's conviction arises from the sexual assault of Janice J. in 1986, in

Detroit.  The Michigan Court of Appeals set forth the relevant facts as follows:

> Complainant Janice J[.] lived in one of four flats at 2446 Buena Vista in the
> City of Detroit with her three sons on May 15, 1986.  On that date she let
> two men enter her flat, Danny (later identified as Dartanian Cummings,
> defendant's brother), and Marcus to use her phone.  After they had left, they
> called to complainant from outside the building, saying that they had left
> something in her flat.  Complainant, who lived on the first floor, told them
> that nothing was left in her apartment.
>
> Complainant testified that Danny then stood outside the building
> threatening to blow it up. Because of this commotion complainant's
> neighbors came over to her flat.  One neighbor was Norman Silar (a/k/a
> Norman Hunter).  Complainant stated that Danny pointed a gun at this
> man's head.  Eventually Danny and Marcus left.
>
> Complainant then attempted to fasten the lock on the front door to the
> building.  The neighbors had apparently gone home.  As she was trying to
> lock the door, [complainant] testified that Marcus and defendant kicked the
> door in. The two men began to push [complainant] around, and demanded
> the object that they claimed had been left in [complainant's] apartment
> when the phone call was made.  The men then kicked, choked and beat
> [complainant]. [Complainant] testified that defendant tore off her blouse
> and bra and the two men held her and ripped her pants down.
> [Complainant] testified that Marcus then viciously abused her sexually
> while defendant held her shoulders.
>
> [Complainant] testified that while she was bleeding from the violent sexual
> assault, defendant took a bat and began to beat her.  Defendant told her,
> "girl you better say something, we are going to tear . . . you up."
>
> Marcus then threatened to harm [complainant's] eleven month old baby,
> who was present in the apartment.  Defendant began to choke
> [complainant].  Later Marcus attempted to force [complainant] to perform
> fellatio on him. [Complainant] testified that the attack lasted from 30 to 40
> minutes.  The police then arrived at the apartment. [Complainant] was taken
> by ambulance to the hospital.  Upon examination, at 2 a.m., on May 16,

> 1986, Dr. Charles Benson, Chief of gynecology at Detroit Receiving
> Hospital, discovered that [complainant] had a recto vaginal fistula.  Dr.
> Benson explained that a fistula was a communication between two areas,
> here [complainant's] rectum and vagina, caused by a hole of approximately
> 2 centimeters.  The doctor said the injury was consistent with an object
> being stuck in the vagina.

*People v. Cummings*, 171 Mich. App. 577, 579-580 (Mich. Ct. App. Sept. 19, 1988).

Petitioner was convicted by a jury in Recorder's Court for the City of Detroit of two counts of first-degree criminal sexual conduct.  On September 22, 1986, he was sentenced to life in prison.

He filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) jury instruction regarding aiding and abetting was incomplete; and (ii) trial court erred in finding that the prosecution exercised due diligence in attempting to locate *res gestae* witnesses.  The Michigan Court of Appeals remanded the case to the trial court for a hearing to determine whether Petitioner was prejudiced by the nonproduction of a *res gestae* witness, Norman Siler (a/k/a Norman Hunter).  *People v. Cummings*, 171 Mich. App. 577 (Mich. Ct. App. 1988).  Following a hearing, the trial court held that Petitioner was not prejudiced by the non-production of the witness.  *People v. Cummings*, No. 86-03739 (Detroit Recorder's Ct. Dec. 9, 1988).  Petitioner challenged the trial court's holding on appeal.  The Michigan Court of Appeals affirmed the trial court's decision. *People v. Cummings*, No. 134235 (Mich. Ct. App. June 10, 1994).  The Michigan Supreme Court denied Petitioner's application for leave to appeal the Michigan Court of Appeals' decision.  *People v. Cummings*, No. 100421 (Mich. Feb. 28, 1995).

3

Petitioner filed a motion for relief from judgment in June 1996.  The trial court denied the motion on November 20, 1996.  *People v. Cummings*, No. 86-03739 (Detroit Recorder's Ct. Nov. 20, 1996).  The Michigan Court of Appeals dismissed Petitioner's application for leave to appeal because of a filing deficiency, *People v. Cummings*, No. 206266 (Mich. Ct. App. Jan. 22, 1999), and the Michigan Supreme court denied Petitioner's application for leave to appeal, *People v. Cummings*,  461 Mich. 877 (Mich. Sept. 29, 1999), and motion for reconsideration.  *People v. Cummings*, 461 Mich. 877 (Mich. Dec. 28, 1999).

On June 8, 2000, Petitioner attempted to file a second motion for relief from judgment.  The  Wayne County Circuit Court returned the motion pursuant to Michigan Court Rules 6.502 and 6.509, which allow a defendant to file only one motion for relief from judgment except under limited circumstances.  The Michigan Court of Appeals dismissed Petitioner's application for leave to appeal for lack of jurisdiction.  *People v. Cummings*, No. 229957 (Mich. Ct. App. Dec. 19, 2001).  The Michigan Supreme Court denied Petitioner's application for leave to appeal because Petitioner failed to show that he should be permitted to file a successive motion.  *People v. Cummings*, 464 Mich. 863 (Mich. May 29, 2001).

Petitioner filed a third motion for relief from judgment in May 2005.  The trial court denied the motion.  *People v. Cummings*, No. 86-3739 (Wayne County Cir. Ct. Nov. 15, 2005).  Petitioner did not seek leave to appeal that denial in the Michigan appellate courts.

4

Petitioner filed a motion to correct invalid sentence in September 2008. The trial court, treating the motion as a fourth motion for relief from judgment, denied the motion. *People v. Cummings*, No. 86-3739 (Wayne County Cir. Ct. June 17, 2009). The Michigan Court of Appeals dismissed Petitioner's application for leave to appeal for lack of jurisdiction because Michigan Court Rule 6.502(G) prohibits an appeal from an order denying a successive motion for relief from judgment. *People v. Cummings*, No. 293522 (Mich. Ct. App. Sept. 24, 2009). The Michigan Supreme Court rejected without filing Petitioner's late application for leave to appeal.

Petitioner filed a fifth motion for relief from judgment in January 2011. The trial Court denied the motion on March 17, 2011. *People v. Cummings*, No. 86-3739 (Wayne County Cir. Ct. March 17, 2011). The Michigan Court of Appeals dismissed Petitioner's application for leave to appeal the denial of his motion for relief from judgment for lack of jurisdiction because a party "cannot appeal the denial or rejection of a successive motion for relief from judgment." *People v. Cummings*, No. 304497 (Mich. Ct. App. Aug. 17, 2011). The Michigan Supreme Court also denied leave to appeal because "the defendant's motion is prohibited by M.C.R. 6.502(G)." *People v. Cummings*, 490 Mich. 972 (Dec. 28, 2011).

Petitioner filed the pending petition on December 21, 2012.

## II. Discussion

Respondent argues that the petition is barred by the one-year statute of limitations. A prisoner must file a federal habeas corpus petition within one year of the "date on

5

which the judgment became final by the conclusion of direct review or the expiration of

the time for seeking such review . . . or the date on which the factual predicate of the

claim or claims presented could have been discovered through the exercise of due

diligence." 28 U.S.C. § 2244(d)(1)(A) & (D). The one-year limitation period begins at

the deadline for filing a petition for a writ of certiorari to the United States Supreme

Court. *Isham v. Randle*, 226 F.3d 69, 694-95 (6th Cir. 2000). In addition, the time during

which a prisoner seeks state-court collateral review of a conviction does not count toward

the limitation period. 28 U.S.C. § 2244(d)(2); *Ege v. Yukins*, 485 F.3d 364, 371-72 (6th

Cir. 2007). A properly filed application for state post-conviction relief, while tolling the

limitation, does not re-fresh the limitation period. *Vroman v. Brigano*, 346 F.3d 598, 602

(6th Cir. 2003).

   In the pending case, Petitioner appealed his conviction first to the Michigan Court

of Appeals, and then to the Michigan Supreme Court. The Michigan Supreme Court

denied his application for leave to appeal on February 28, 1995. Petitioner had ninety

days from that date to file a petition for writ of certiorari with the United States Supreme

Court, which he did not do. Thus, his conviction became final on May 29, 1995, when

the time period for seeking certiorari expired. *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th

Cir. 2000) (one-year statute of limitations does not begin to run until the time for filing a

petition for a writ of certiorari for direct review in the United States Supreme Court has

expired). Where a state court conviction becomes final before the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132,

6

110 Stat. 1220 (April 26, 1996), the limitations period commences on April 24, 1996. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir 2002).

Accordingly, the limitations period commenced on April 24, 1996, and continued to run until Petitioner filed a motion for relief from judgment on June 1, 1996. That motion, a properly filed motion for state-court collateral review, tolled the limitations period after only 37 days elapsed. *See* 28 U.S.C. § 2244(d)(2). The limitations period resumed running on December 29, 1999, the day after the Michigan Supreme Court denied Petitioner's motion for reconsideration of the denial of his application for leave to appeal. Petitioner attempted to file a second motion for relief from judgment, in June 2000, but that motion was returned without filing because Petitioner was not permitted to file a successive motion for relief from judgment. *See* July 28, 2000 Letter from Circuit Court Judge Patricia S. Fresard to Petitioner, filed by Respondent under Rule 5, Rules Governing Section 2254 Cases. The Michigan Court of Appeals dismissed his application for leave to appeal on jurisdictional grounds. *People v. Cummings*, No. 229957 (Mich. Ct. App. Dec. 19, 2000). The Michigan Supreme Court denied leave to appeal because Petitioner was not permitted to file a second motion for relief from judgment. *People v. Cummings*, 464 Mich. 863 (Mich. May 29, 2001).

"[S]econd or successive motions for relief from judgment barred by Michigan Court Rule 6.502(G) are not 'properly filed application[s] for State . . . collateral review' and, therefore do not stop . . . the running of the limitations clock under § 2244(d)(2)." *Bey v. Capello*, 525 F. App'x 405, 409 (6th Cir. 2013), *citing Williams v. Birkett*, 670

F.3d 729, 733 (6th Cir. 2012).  Likewise, applications for state court appellate review of a dismissal of a second or successive motion for relief from judgment do not stop the running of the limitations clock.  *Id.*  Petitioner's second motion for relief from judgment and the applications for state appellate review, therefore, did not toll the limitations period.  The limitations period continued to run until it expired on November 23, 2000. The present application, filed on December 21, 2012, was filed over 12 years after the limitations period expired.

Petitioner argues that his claim of actual innocence should equitably toll the limitations period.  A credible claim of actual innocence may equitably toll the one-year statute of limitations.  *See Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005).  To determine whether a petitioner has satisfied the requirements for establishing a cognizable claim of actual innocence to warrant equitable tolling, the court applies "the same actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), for reviewing a federal habeas applicant's procedurally defaulted claim."  *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007), *citing Souter*, 395 F.3d at 596.  A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324.  "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case."  *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted).  A court presented with new evidence must consider it in light of "all the

8

evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.*, 547 U.S. at 538 (citation omitted). "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (*quoting Schlup*, 513 U.S. at 329). This standard does not require absolute certainty about the petitioner's guilt or innocence:

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House*, 547 U.S. at 538.

Petitioner claims that two affidavits are newly-discovered evidence establishing his actual innocence. The first is an affidavit from his brother, Dartanian Cummings. In his affidavit, dated April 10, 2009, Dartanian states that Petitioner was not at the victim's home on the day of the assault and that Marcus Bush was the individual who beat and sexually assaulted the victim. Dartanian stated that he did not come forward sooner because he was involved in a drug trafficking operation with the victim and feared he would be charged with drug-related crimes if he came forward. Dartanian further states that he appeared at the courthouse during Petitioner's trial because Petitioner told Dartanian he would be called as a witness, but he was not called. Dartanian stated that he would have testified had he been called.

Dartanian's affidavit does not represent the type of credible evidence leading to the

conclusion that it is more likely than not that no reasonable juror would have voted for conviction had they heard this evidence. Several factors call into question the credibility of Dartanian's statement. Dartanian is Petitioner's brother. Dartanian waited over 22 years after Petitioner's conviction to execute an affidavit. In addition, Petitioner did not diligently seek relief after obtaining the affidavit. A prisoner who presents a convincing actual-innocence claim does not have to "prove diligence to cross a federal court's threshold," but timing is "a factor relevant in evaluating the reliability of a petitioner's proof of innocence." *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1935 (2013). Petitioner waited over two years after Dartanian executed his affidavit to file a motion for relief from judgment. Petitioner then waited almost a year after exhausting this newly-discovered evidence in state court to file a habeas petition.

The second affidavit, from Antonio James Taylor, suffers from similar credibility problems.[1] Taylor is a prisoner serving a life sentence and currently incarcerated at the same facility as Petitioner. In his affidavit, Taylor states that he dated the victim at the time of the assault. She told Taylor that two men, known to her as "Danny" and "Marcus" beat her up and that Marcus sexually assaulted her. Taylor further states that the victim told him that Petitioner was not involved in the assault. Taylor's affidavit is

---

[1] Antonio James Taylor's affidavit is attached to Petitioner's Motion to Expand the State Court Record under Rule 7, Rules Governing Section 2254 Cases. Rule 7, Rules Governing Section 2254 Cases, allows for expansion of the record in habeas corpus proceedings at the judge's discretion by inclusion of additional relevant materials. The Court grants Petitioner's Motion.

also not the type of reliable evidence that would establish Petitioner's actual innocence. Taylor is incarcerated with Petitioner and such jailhouse affidavits are regarded with extreme suspicion. *See Carter v Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006). Taylor's affidavit is executed more than 25 years after the crimes occurred and contains unsubstantiated hearsay evidence. It includes no first-hand knowledge of the crime and only relays hearsay. As such, it falls far short of the standard necessary to support a claim of actual innocence in this context. Petitioner has failed to show entitlement to equitable tolling on the basis of actual innocence.

Finally, Petitioner's argument that the Court predetermined that the petition was not subject to summary dismissal is meritless. Shortly after the petition was filed, the Court issued an order requiring responsive pleading. The Order stated that the Court examined the petition and it was not subject to summary dismissal under Rule 4, Rules Governing Section 2254 cases. This was not a decision on the timeliness of the petition. A court may *sua sponte* dismiss a habeas petition for untimeliness upon initial screening after giving the parties notice and an opportunity to be heard, *Day v. McDonough*, 547 U.S. 198, 210 (2006), but is not required to do so. The Court may, instead, order a responsive pleading and decide the timeliness question when and if it is raised by the respondent. *See Plummer v. Warren*, 463 F. App'x 501, 505 (6th Cir. 2012).

### III. Certificate of Appealability

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The

11

district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000) . "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* In such a circumstance, no appeal is warranted. *Id.*

The Court declines to issue Petitioner a certificate of appealability, because reasonable jurists would not find it debatable whether this Court was correct in determining that Petitioner filed his habeas petition outside of the one-year limitations period and equitable tolling is not warranted. Nor should Petitioner be granted an application for leave to proceed on appeal in forma pauperis. See Fed. R.App. P. 24(a).

## IV.  Conclusion

IT IS ORDERED that Petitioner's "Motion to Expand the State Court Record" [dkt. # 9] is GRANTED.

12

Respondent's "Motion for Summary Judgment" [dkt. #11] is GRANTED, and

Petitioner's "Petition for Writ of Habeas Corpus" [Doc. 1] is DISMISSED with prejudice.

IT IS FURTHER ORDERED that the Court DECLINES to issue Petitioner a

certificate of appealability and DENIES him an application for leave to appeal in forma

pauperis.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  February 7, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on February 7, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135